UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DONNA LYNN CROSBY,            18-CV-391-MJR
                              DECISION AND ORDER
       Plaintiff,

   -v-

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 17).

Plaintiff Donna Lynn Crosby brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her Social Security Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Crosby's motion (Dkt. No. 10) is granted, the Commissioner's motion (Dkt. No. 15) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

On July 12, 2014, Crosby filed an application for DIB alleging disability since July 1, 2013 due to fibromyalgia, chronic fatigue syndrome, restless leg syndrome, periodic limb movement disorder, a positive rheumatoid factor, and a degenerative disc at the L5-S1 level. (*See* Tr. 88, 162-63, 179).[1] Born in 1972, Crosby was forty-one years old at

---

[1] References to "Tr." are to the administrative record in this case.

the time of her application. (Tr. 162). She previously worked as a real estate broker (Tr. 59), but she contends that she can no longer work due to her impairments. Crosby's DIB application was denied on September 12, 2014 (Tr. 88-101), after which she requested a hearing before an Administrative Law Judge (Tr. 102-03). On June 22, 2017, Crosby appeared with counsel before Administrative Law Judge Melissa Lin Jones (the "ALJ") for a hearing. (Tr. 47-87). On August 16, 2017, the ALJ issued her decision denying Crosby's DIB claim. (Tr. 12-30). Crosby requested review by the Appeals Council (Tr. 158-61), but on January 29, 2018, the Appeals Council denied Crosby's request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-6). This action followed.

## **DISCUSSION**

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or

whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the

claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating Crosby's DIB claim. Under step one, the ALJ found that Crosby has not engaged in substantial gainful activity since July 1, 2013, her alleged onset date. (Tr. 17). At step two, the ALJ concluded that Crosby has medically determinable impairments of lumbago, periodic limb movement disorder, and "general aching with fatigue," but that none of these impairments are severe. (Tr. 18-22). Although the ALJ could have concluded her analysis and found Crosby not disabled at this point, she made an "alternative finding" that Crosby's myalgia is a severe impairment, and proceeded to the remaining steps of the five-step sequential evaluation process. (Tr. 22). At step three, the ALJ found that Crosby does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.*). Before proceeding to step four, the ALJ concluded that Crosby has the RFC to perform the full range of light work as defined in 20 C.F.R. §404.1567(b).[2] (*Id.*). Then, at step four, the ALJ found that Crosby is capable of performing her past relevant work as a real estate broker. (Tr. 25). In the alternative, the ALJ proceeded to step five where she considered Crosby's age, education, work experience, and RFC to conclude that Crosby can perform jobs that exist in significant numbers in the national economy. (Tr. 25-26). Accordingly, the ALJ found that Crosby has not been under a disability within the meaning of the Act from her alleged onset date of July 1, 2013 through the date of the ALJ's decision. (Tr. 26).

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §404.1567(b).

IV. *Crosby's Challenge*

Crosby argues that the ALJ erred in concluding that her fibromyalgia is not a severe impairment. (*See* Dkt. No. 10-1 (Crosby's Memo. of Law)).

The ALJ must determine at step two whether or not the claimant has a severe impairment. 20 C.F.R. §404.1520(c). Before an impairment can be found severe, it must be "medically determinable." *Id.* §§404.1520(a)(4)(ii), 404.1521; *see also Keller v. Colvin*, No. 16-CV-6399P, 2017 WL 4112024, at *12 (W.D.N.Y. Sept. 18, 2017). A medically determinable impairment is one that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §404.1521. A medically determinable impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c).

Social Security Ruling ("SSR") 12-2p sets forth criteria to determine whether a claimant has a medically determinable impairment of fibromyalgia. 2012 WL 3104869 (July 25, 2012). Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." *Id.* at *2. It "is a common syndrome." *Id.* For a claimant to have a medically determinable impairment of fibromyalgia, the claimant's physician must diagnose fibromyalgia and provide evidence that satisfies the 1990 or 2010 American College of Rheumatology ("ACR") diagnostic criteria. *Id.* At issue in this case is the 2010 ACR criteria, which requires: (1) "[a] history of widespread pain"; (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions," such as fatigue or tiredness, waking unrefreshed, depression, muscle pain and

weakness, headaches, migraines, numbness or tingling, insomnia, blurred vision, dizziness, chronic fatigue syndrome, and restless leg syndrome; and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." *Id.* at *3 & nn. 9-10.[3]

Here, the ALJ acknowledged that Crosby's treating rheumatologist, Dr. Mark Schulte, diagnosed Crosby with fibromyalgia. (Tr. 21). The ALJ nonetheless concluded that Crosby's fibromyalgia is not a medically determinable impairment under the 2010 ACR criteria because the "record does not document the repeated manifestation" of six or more of the symptoms, signs, or conditions set forth in SSR 12-2p. (*Id.*).[4] Contrary to the ALJ's conclusion, the record indicates multiple instances of six or more of the symptoms, signs, or co-occurring conditions set forth in SSR 12-2p, specifically, muscle pain (Tr. 256, 315, 326, 435, 464), insomnia (Tr. 315, 439, 464), fatigue or tiredness (Tr. 63, 437, 439, 464, 486), restless leg syndrome (Tr. 432, 463, 472), numbness and tingling (Tr. 346, 486-87), depression, for which Crosby took an anti-depressant (Tr. 445, 449, 453, 454, 458), and blurred vision, headaches, migraine headaches, and dizziness (Tr. 486). Accordingly, the ALJ's conclusion that Crosby does not have a medically determinable impairment of fibromyalgia is not supported by substantial evidence.

The Commissioner suggests, however, that even if the ALJ erred in excluding Crosby's fibromyalgia as a medically determinable impairment, the error was harmless

---

[3] Crosby does not contend that she meets the 1990 ACR criteria, which requires evidence of, among other things, at least eleven positive tender points on physical examination. *See* SSR 12-2p, 2012 WL 3104869, at *2-3.

[4] In making this finding, the ALJ seems to have misconstrued SSR 12-2p. Under SSR 12-2p, the ALJ must look to whether the physician who diagnosed the claimant with fibromyalgia set forth evidence of such symptoms, signs, or co-occurring conditions, not whether the record as a whole contains such evidence. SSR 12-2p, 2012 WL 3104869, at *2 ("We will find that a person has an MDI of FM if the physician diagnosed FM and provides the evidence [set forth in the 1990 or 2010 ACR criteria] . . . .").

because the ALJ considered Crosby's complaints of fibromyalgia-related pain in assessing her RFC. However, an ALJ may credit a claimant's statements about her pain or other symptoms only if the impairment to which they relate is medically determinable. *See* SSR 12-2p, 2012 WL 3104869, at *5. Put another way, because the ALJ concluded that Crosby's fibromyalgia is not a medically determinable impairment, she had no basis to credit Crosby's statements regarding her fibromyalgia-related pain in assessing her RFC. *See Cooper v. Comm'r of Soc. Sec.*, No. 17-CV-1058-MJR, 2019 WL 1109573, at *5 (W.D.N.Y. Mar. 11, 2019). Had the ALJ credited Crosby's fibromyalgia-related complaints of "nerve pain" from "head to toe" and "flare ups" once or twice a month that left her bedridden (Tr. 64), the ALJ might very well have reached a different disability decision, particularly because the vocational expert testified at the hearing that missing work twice a month impacts an individual's ability to perform her essential work tasks and functions (Tr. 85).

Accordingly, for these reasons, the ALJ's decision to exclude Crosby's fibromyalgia as a medically determinable impairment is not supported by substantial evidence, and this case is remanded for the ALJ to properly evaluate Crosby's fibromyalgia under SSR 12-2p. The ALJ should also consider on remand Crosby's alternative arguments that: (1) the ALJ incorrectly evaluated how her stress affects her fibromyalgia; and (2) the ALJ improperly reached her decision without the benefit of any medical opinion evidence. (*See* Dkt. No. 10-1 (Crosby's Memo. of Law) at 16-21).

## **CONCLUSION**

For the foregoing reasons, Crosby's motion for judgment on the pleadings (Dkt. No. 10) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No.

15) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: July 11, 2019
Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge